[No. 3559.   April 30, 1931.]

## GAASTRA, GLADDING & JOHNSON v. BISHOP'S LODGE CO.

[299 Pac. 347.]

Francis C. Wilson and Thos. H. Dodge, both of Santa Fe, for appellant.

David Chavez, Jr., and Willis N. Birdsall, both of Santa Fe, for appellees.

### OPINION OF THE COURT

SADLER, J.

The appellant, Bishop's Lodge Company, a corporation, employed the appellees, Gaastra, Gladding & Johnson, co-partners, as architects to furnish plans for certain improvements to be erected upon the premises of appellant. The contract between the parties called upon appellant to pay to appellees for plans only 3½ per cent. of the total cost of the building.   The appellees furnished plans only. so that this provision for compensation became operative.

The building was constructed in substantial compliance with the plans furnished by the appellees and at a total cost of $39,288.15.   On November 5, 1928, the appellees

filed with the county clerk of Santa Fe county, N. M., a claim of mechanic's lien to secure the sum of $1,375.09, being 3½ per cent. of the total cost of said building. From the decree of the district court of Santa Fe county foreclosing such lien, the appellant has prosecuted this appeal. The appeal presents a single question for review, to wit; Is an architect who furnishes plans actually used in the construction of a building entitled to a lien upon the same for his services thus rendered?

The first impression, following a careful reading of Johnson v. McClure, 10 N. M. 506, 62 P. 983, is very apt to mislead one into the belief that this question is one easy of solution. A little delving into the authorities, however, will very quickly dispel this misapprehension. Indeed, there is a wide diversity of opinion apparent in the authorities upon the very question to be considered.

We naturally advert, as the first step in a consideration of this question, to our controlling statutory provision. Section 82-202, N. M. Statutes Annotated 1929, provides among other things as follows:

"Every person performing labor upon, or furnishing materials to be used in the construction, alteration or repair of any * * * building, * * * or any other structure, * * * has a lien upon the same for the work or labor or materials furnished by each respectively, whether done or furnished at the instance of the owner of the building or other improvement, or his agent, and every contractor, sub-contractor, architect, builder, or other person having charge * * * of the construction, alteration or repair, either in whole or in part, of any building or other improvement, as aforesaid, shall be held to be the agent of the owner for the purposes of this article."

The decisions are not entirely harmonious upon the question whether the services of an architect as such are within the protection of mechanic's lien statutes, the right being denied in some jurisdictions on varying grounds. In Mitchell v. Packard, 168 Mass. 467, 47 N. E. 113, 60 Am. St. Rep. 404, and Stephens v. Hicks, 156 N. C. 239, 72 S. E. 313, 36 L. R. A. (N. S.) 354, Ann. Cas. 1913A, 272, the right to lien is denied an architect for plans and specifications upon the ground that the work of preparing same is not manual or onerous labor; whereas in Ames v. Dyer, 41 Me. 397, the ground for denying the lien is

that such plans, or as it happened to be in that case, mould for a ship, do not enter into and become a part of the improvement.

But, regardless of this contrariety of opinion, it is now too well settled to admit of successful contradiction that the architect's right to a lien exists where his claim embraces both plans and superintendence.

"It may therefore be regarded as established by a decided preponderance of the cases that the right to a lien exists when the claim is for both plans and superintendence." 5 C. J. 267.

The decision of our territorial Supreme Court in Johnson v. McClure, 10 N. M. 506, 62 P. 983, is in accord with this weight of authority. The diversity of opinion is most marked, however, where the claim is based upon the furnishing of plans used in the building, without supervision or superintendence by the architect. There is no decided weight of authority the one way or the other on this phase of the question.

In the jurisdictions indicated by the following cases, the lien was denied where the claim was based solely upon the furnishing of plans, or plans and specifications, without superintendence or supervision: Ames v. Dyer, 41 Me. 397; Rinn v. Electric Power Company, 3 App. Div. 305, 38 N. Y. S. 345; Thompson-Starrett Company v. Brooklyn Heights Realty Co., 111 App. Div. 358, 98 N. Y. S. 128; Stephens v. Hicks, 156 N. C. 239, 72 S. E. 313, 36 L. R. A. (N. S.) 354, Ann. Cas. 1913A, 272; Price v. Kirk, 90 Pa. 47; Bennett v. Frederick R. Gerry Co., 273 Pa. 585, 117 A. 345; Mitchell v. Packard, 168 Mass. 467, 47 N. E. 113, 60 Am. St. Rep. 404; Libbey v. Tidden, 192 Mass. 193, 78 N. E. 313, 7 Ann. Cas. 617; Palm Beach Bank & Trust Company v. Lainhart, 84 Fla. 662, 95 So. 122.

The following authorities support the architect's right to the lien for furnishing plans only, where the building is constructed in accordance with such plans, notwithstanding there is no supervision or superintendence by the architect furnishing the same: 5 C. J. 266; 40 C. J. 79; Henry & Coatsworth Co. v. Halter, 58 Neb. 685, 700, 79 N. W. 616; Gardner v. Leck, 52 Minn. 522, 54 N. W. 746; La-

moreaux v. Andersch, 128 Minn. 261, 150 N. W. 908, L. R. A. 1915D, 204; Parsons v. Brown, 97 Iowa, 699, 66 N. W. 880; Fitzgerald v. Walsh, 107 Wis. 92, 82 N. W. 717, 81 Am. St. Rep. 824; Hornlein v. Bohlig, 37 Cal. App. 646, 174 P. 697. See, also, the cases of Marchetti v. Sleeper, 100 Conn. 339, 123 A. 845, and Read v. Whitney, 45 Ont. L. R. 377, where there were both plans and supervision, yet in which the courts indicate the lien may be sustained for the plans alone without supervision. Nimmons v. Lyon, 197 Ill. App. 376, and Freeman v. Rinaker, 185 Ill. 172, 56 N. E. 1055, uphold the claim of lien for plans alone, but under a statute specifically covering the services of an architect.

Well-edited annotations of this subject, prepared at different stages in the development of the law upon the same, may be found in 16 L. R. A. 600 (1892); 36 L. R. A. (N. S.) 354 (1911); 60 A. L. R. 1267 (1927).

It will be observed from an examination of the cases hereinabove cited as well as from a classification of the jurisdictions on either side of the proposition in 60 A. L. R. 1267-1269, that there is really no preponderance of authority either way upon the question to be decided in this case. It therefore must be determined which line of decision is the better supported in reason and upon principle.

It cannot be gainsaid that the architect plays a most important part in modern building operations. Even so long ago as the date of the enactment of our statute creating a mechanic's lien (chapter 16, Laws of 1880), the architect had attained such importance in the building trades as to cause the Legislature to constitute him, along with contractors and subcontractors, when in charge of any building operations, agent of the owner for purposes of the statute.

The courts quite generally have recognized the importance of the architect in building operations, and have extended to him the protection of the statute.

"The work or services of an architect are generally necessary in the construction of buildings and other works; not as necessary, in one sense, nor at all of the same character, as the work of a

hod-carrier, for instance, in buildings of brick; but often, if not always, profitable to the owner in the greater enhancement of the value of his property in the erection of a better building through the architect's skill and services; and, though his work is not of the afterwards visible mechanical character, it is none the less advantageous work done in erecting the building. * * *"

"I can see no reason why superintending the building is any less 'service upon' the building than carrying bricks and mortar to the bricklayers, and I agree with the Vice-Chancellor (22 Gr. 315, 316) that drawing plans etc. is an essential thing 'to be done in the construction of the work,' and that he who draws such plans for a building 'actually does work upon it as if he had carried a hod'." Read v. Whitney, 45 Ont. L. R. 377.

In Phoenix Furniture Co. v. Put-in-Bay Hotel Co. (C. C.) 66 F. 683, 685, it was sought to exclude from the language of a statute similar in purport to ours, the services of an architect who both furnished plans and superintended construction, upon the ground that the word "labor" as used in the statute meant only manual labor. The court said:

"The contention that the word 'labor' in this statute means only manual labor or unskilled labor would put upon it a very narrow and strained construction. There is no reason in equity or in law why the architect who conceives and puts upon paper the design for such an immense building as this Hotel Victory is, and who puts upon paper with such minuteness of detail the specifications and drawings as to enable any one skilled in such business to erect, with perfect proportions and proper stability, such a mammoth structure, should not be protected in his contribution to the completion of such work, as well as the carpenter, the plumber, the painter, or the frescoer who performs manual labor. The court certainly ought not to strain the statute to exclude labor of this high character and grade, unless it is plainly the intent of the legislature that it should bear such interpretation."

In Marchetti v. Sleeper, 100 Conn. 339, 123 A. 845, 846, the court, in dealing with a statute similar in effect to ours, where there appeared to have been "plans and supervision," said:

"Now, if the work were started without any plans and specifications, and some one were hired to furnish all necessary information and directions as the work progressed, it could not reasonably be denied that his services were rendered 'in the construction' of the building. And, unless those words confine the lien to materials delivered and services rendered after the construction has been commenced, it can make no difference that the information necessary to the construction of the building has been embodied in plans and specifications prepared before such commencement. Of course, there can be no lien until some actual or theoretical increment of value has attached itself to the land by the com-

mencement of the building; but if materials delivered before that time are thereafter incorporated in the building, or if services rendered before that time in the preparation of plans and specifications are thereafter utilized in its construction, the same logical and equitable basis for the lien exists as if the materials had not been furnished, or the services had not been rendered until after the commencement of the building. It seems clear, therefore, that the words 'in the construction of the building' relate to the fact of actual use in construction of the building irrespective of the time when the materials are furnished or the services performed; and that being so it must follow that the services of an architect in the preparation of plans and specifications, when they are afterward used in the construction of the building, are services rendered in its construction, for which the architect is entitled to a lien under our statute. Our conclusion appears to be in accord with the current of decision, although the question is in each state one of interpretation of the local statute." (Citations omitted.)

The Supreme Court of Nebraska in Henry & Coatsworth Co. v. Halter, 58 Neb. 685, 700, 79 N. W. 616, 619, adopted the view that plans alone without superintendence entitled the architect to a lien. The court said:

"The appellees contend that an architect who has prepared plans, specifications, and details for a building, is not, except as an incident to superintendence, entitled to a lien for his services. In Fiske v. School District, 58 Neb. 163, 78 N. W. 392, there is an intimation that an architect is entitled to a mechanic's lien upon a building which has been constructed in accordance with plans prepared by him under contract with the owner. We now hold that the work of drawing such plans enters into the construction of the building which is afterwards erected in conformity therewith, and that the architect in such case is within the purview of section 1 of the mechanic's lien law."

Many, or at least some, of the jurisdictions which deny to an architect a lien for his services do so upon the conception, as above stated, that his services are not "labor" within the meaning of the statute. We regard this view as obsolete and inconsistent with that liberal construction of our mechanic's lien statutes to which this court is committed. Lyons v. Howard, 16 N. M. 327, 117 P. 842.

"The appellants say the lien is given only to a person who labors, and the architect and contractor did not labor. If they did not labor, what word will characterize the service they furnished? When the architect idealized the structure and put it upon paper, what was his effort if not labor? When the Master sent out 'other seventy' to do his work, he called them laborers."

Williamson v. Hotel Melrose, 110 S. C. 1, 34, 96 S. E. 407, 415.

That our statute was not intended to apply alone to those who do toilsome or manual labor is apparent from its terms, for in express language it includes those who furnish materials. Nor, indeed, does the statute attempt to name the class of persons entitled to its protection. Any limitation in the act operates, not on the person, but upon the purpose for which the labor is "performed" or materials "furnished." . "Every person" performing the labor or furnishing the materials contemplated by the act is afforded a lien by its provisions.

Even the plasterer, the carpenter, the bricklayer, and the plumber, artisans and workmen whose claims to lien under this statute are too well established to admit of the slightest questioning, cannot predicate such claims on any designation of themselves in the statute as classes of persons within its protection. So, too, it seems to us the architect who furnishes the painstaking care and skill necessary in the preparation of plans for a building or other improvement of the kind mentioned in the statute, and which actually are employed in constructing the same, has "performed labor" within the meaning of our statute, and is therefore entitled to a lien.

It will be observed that, in all of the states denying the architect's right to a lien for plans alone (save in those few jurisdictions where the minority view prevails that neither plans nor superintendence give a lien, 60 A. L. R. 1265), the lien is recognized and enforced if the furnishing of plans is coupled with superintendence. Upon what ground this position is taken we do not apprehend. It is wholly inconsistent and cannot be supported upon principle.

We fail to understand how unlienable items or services are any the less so because urged as the basis of a lien claim along with items admittedly lienable. It is well established that, if lienable and unlienable items are so commingled in a statement of lien that they cannot be segregated, the whole lien claim must fail. This court has so held. Boyle v. Mountain Key Mining Co., 9 N. M. 237, 252, 50 P. 347. And Massachusetts at least promotes the doctrine of consistency by applying this rule to a lien claim

based both upon plans and superintendence, Libbey v. Tidden, 192 Mass. 175, 78 N. E. 313, 320, 7 Ann. Cas. 617, and denies the whole claim of lien.

The inconsistency in the rule adopted in those jurisdictions which deny the lien for plans alone but give it for plans and supervision is well stated in the concurring opinion of Mr. Justice Clark in the case of Chesnow v. Gorelick. 246 Mich. 571, 225 N. W. 4, 6. He said:

> "To assume that an architect is not entitled to mechanic's lien for services in preparing plans and specifications used in the building, and then to hold that, because he superintends the construction of the building, he may have lien for both, cannot be supported in principle. That he renders a service for which he has right of lien does not give right of lien for another service not so favored under the law. The majority rule, which we should adopt, is that an architect who prepares plans and specifications actually used in the construction of a building is entitled to a mechanic's lien for the services."

In the foregoing case it had been assumed for the purposes of the opinion that an architect under the Michigan statute would not have a lien for plans alone and agreed that for superintendence alone he would have the lien; the question for decision being whether plans as an incident to superintendence carried a lien for both.

The case just cited is the only one we have observed in which the court has sought to advance any theory warranting the denial of the lien in the one case and the granting of it in the other. After reviewing some of the cases, the court said:

> "The theory of these cases and others cited by the plaintiff is that the labor of superintendence works the plans into the construction so that they actually become part of the building."

But if the plans are actually followed in the construction of the building, do they not as truly become a part thereof under labor of superintendence furnished by a stranger as when furnished by their maker? Skillful superintendence will as truly relate the completed structure to the plans of the architect in the one case as in the other.

A careful consideration of the whole matter convinces us of the correctness of the view that within the

purview of our statute an architect who, under contract with the owner, furnishes plans actually used in the construction of a building, is entitled to a lien, whether such plans are worked into the building under his supervision or under that of some other person.

We go no further than to hold the architect, entitled to the lien under the conditions named, one of which is the employment of the plans in the construction of the building. Under a statute almost identical in language with ours (section 1129, Rem. & Bal. Code), the Supreme Court of Washington in Lipscomb v. Exchange National Bank, 80 Wash. 296, 141 P. 686, held no lien to exist in favor of the architect for plans furnished where no building was constructed.

We find no error in the holding of the trial court, and therefore affirm its judgment and remand the cause. It is so ordered.

PARKER and HUDSPETH, JJ., concur.

BICKLEY, C. J., and WATSON, J., did not participate.